UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

DEC - 7 2012

SUNTRUST MORTGAGE, INC.,

    Plaintiff,

v.          Civil Action No. 3:12CV330-JRS

NATIONWIDE EQUITIES
CORPORATION,

    Defendant.

## MEMORANDUM OPINION

THIS MATTER is before the Court on a Motion to Dismiss an Amended Third-Party Complaint filed by Third-Party Defendants Nelson & Roach Title Corp. ("N&R Title"), Nelson & Roach Attorneys at Law ("N&R Law") and John E. Nelson ("Nelson") (collectively, the "Nelson parties") (ECF No. 33.) Plaintiff SunTrust Mortgage, Inc., ("SunTrust") seeks damages from Defendant Nationwide Equities Corporation ("Nationwide") for losses suffered due to alleged misrepresentations regarding a home mortgage loan brokered to SunTrust by Nationwide. Nationwide has, in turn, filed a Third-Party Complaint, now amended, against the borrower Steve Lamour ("Lamour") and the Nelson parties. The Nelson parties now seek to dismiss the Amended Third-Party Complaint against them for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials presently before the

Court, and argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons discussed below, the Motion to Dismiss is GRANTED.

## I. Background

On January 3, 2007, SunTrust and Nationwide entered into an agreement ("Agreement") in which Nationwide agreed to originate, process, and broker home mortgage loans to SunTrust. On September 24, 2007, Nationwide agreed to act as the broker for borrower Steve Lamour's application for a home mortgage loan for property located in Somerville, Massachusetts. Nationwide applied to SunTrust to fund the purchase of the Lamour property, and Lamour's loan application materials represented that he would occupy the property as his primary residence. The loan was closed on or about October 30, 2007, with the Nelson parties providing legal, title and settlement services to Lamour.

In closing the loan, the Nelson parties agreed to comply with master and supplemental closing instructions in which the Nelson parties agreed that the "Settlement Agent will be made liable for losses incurred by the Lender as a result of the agent closing a loan with knowledge that errors were contained in any documents or instructions." (Def.'s Decl. re Mem. Opp. Ex. D, ECF No. 38-4.) In addition, these instructions directed the Nelson parties to deliver the loan package materials and other related documents to SunTrust's address in Richmond, Virginia. Nationwide alleges that the Occupancy Affidavit in which Lamour represented that he would occupy the property was among the documents that the Nelson parties signed, notarized, and mailed to SunTrust in Virginia.

SunTrust sold the Lamour loan to the Federal Home Loan Mortgage Corporation ("Freddie Mac") on or about December 12, 2007, and was notified on February 11, 2010 that it was obligated to repurchase the loan "due to a false representation that the owner would occupy the property." (Compl. ¶ 12, ECF No. 1.) Upon the parties' information and belief, Lamour purchased three (3) additional properties at the same time that he purchased the property at issue here, each of which was closed as an owner-occupied property. SunTrust has filed suit against Nationwide for breach of Nationwide's warranties regarding the accuracy of the loan materials and the acceptability of the investment on the Lamour property. SunTrust also seeks indemnification for its losses following its repurchase of the loan from Freddie Mac on April 21, 2010.

Nationwide filed a Third-Party Complaint against Lamour on July 20, 2012 arguing that to the extent that SunTrust succeeds in its claim against Nationwide, it will be because Lamour breached the terms of his contract with Nationwide. Nationwide filed an Amended Third-Party Complaint on September 19, 2012, adding the Nelson parties as Third-Party Defendants on the ground that the Nelson parties knew or should have known that Lamour was buying multiple properties, all as owner-occupied units.

The Nelson parties seek dismissal of the Amended Third-Party Complaint against them for lack of personal jurisdiction. As alleged in the Amended Third-Party Complaint, Nationwide is a New York corporation with its principal place of business in New Jersey. Lamour is a citizen of the Commonwealth of Massachusetts. N&R Title and N&R Law are both business entities in the Commonwealth of Massachusetts with

their principal place of business located at 39 Revere Road in Quincy, Massachusetts. Nelson is a licensed attorney and citizen of the Commonwealth of Massachusetts.

Pursuant to a forum selection clause in the Agreement, Nationwide and SunTrust have submitted to personal jurisdiction in Virginia and to venue in this Court. (*See* Compl. Ex. 1 ¶ 30.) However, the Nelson parties argue that they did not sign or adopt, and were not otherwise party to, the Agreement between SunTrust and Nationwide, and therefore, the forum selection clause does give rise to personal jurisdiction over them. The Nelson parties further argue that they do not have the required minimum contacts in Virginia to satisfy Virginia's long-arm jurisdictional statute or the requirements of due process. The Motion to Dismiss has been fully briefed and this matter is ripe for review.

## II. Standard of Review

When a defendant challenges the Court's authority to exercise personal jurisdiction over the defendant under Rule 12(b)(2), the plaintiff bears the burden to prove the grounds for jurisdiction by a preponderance of the evidence. *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993). *See* Fed. R. Civ. P. 12(b)(2). However, when the Court decides a motion challenging personal jurisdiction without an evidentiary hearing, the plaintiff need only make a prima facie case of personal jurisdiction. *Id.* The Court must draw all reasonable factual inferences and resolve all factual disputes in the light most favorable to the plaintiff. *Id.*

In order to determine whether the Court has personal jurisdiction over a non-resident defendant, the Court must first determine whether the forum state's "long-arm" statute permits jurisdiction. *See Wolf v. Richmond County Hospital Authority*, 745 F.2d

4

904, 909 (4th Cir. 1984). Virginia's "long-arm" statute, § 8.01-328.1, confers jurisdiction when the cause of action arises from the defendant's transacting any business in Virginia, and a single act of transacting business in Virginia can allow for the proper exercise of personal jurisdiction over the defendant. *See* Va. Code § 8.01-328.1(A)(1); *D'Addario v. Geller*, 264 F.Supp.2d 367, 379 (E.D. Va. 2003).

The Court must also determine whether the exercise of personal jurisdiction, even if permitted by the forum state's long-arm statute, comports with constitutional due process. Virginia's long-arm statute extends personal jurisdiction to the extent allowed by the Due Process Clause of the Fourteenth Amendment, thus, "the statutory inquiry merges with the constitutional inquiry." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009); *see New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005). Furthermore, "the scope of the 'transacting business' requirement of the statute, § 8.01-328(A)(1), has specifically been construed to be limited only by the bounds of due process." *Superfos Invest., Ltd. V. Firstmiss Fertilizer, Inc.*, 774 F.Supp. 393, 397 (E.D. Va. 1991). "To satisfy the constitutional due process requirement, a defendant must have sufficient minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id* (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (internal quotation marks omitted).

### III. Discussion

Personal jurisdiction may either be general, if the defendant has continuous and systematic contacts with the forum state, or specific, if the defendant's contacts in the

forum state are limited to the activities which give rise to the cause of action. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). Nationwide has argued only that the Court may exercise specific personal jurisdiction over the Nelson parties. To determine if the Court has specific personal jurisdiction, the Fourth Circuit has specified a three-part test in which the Court considers: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Eng'rs Corp.*, 561 F.3d at 278 (internal citations and quotations omitted).

Nationwide has failed to satisfy the first prong of a prima facie showing of specific personal jurisdiction, namely that the Nelson parties purposefully availed themselves of the privilege of conducting business in Virginia. The Fourth Circuit has provided several factors for the court to consider in determining purposeful availment:

- whether the defendant maintains offices or agents in the forum state, . . .
- whether the defendant owns property in the forum state, . . .
- whether the defendant reached into the forum state to solicit or initiate business, . . .
- whether the defendant deliberately engaged in significant or long-term business activities in the forum state, . . .
- whether the parties contractually agreed that the law of the forum state would govern disputes, . . .
- whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship, . . .
- the nature, quality and extent of the parties' communications about the business being transacted, . . . and
- whether the performance of contractual duties was to occur within the forum . . .

*Consulting Eng'rs Corp.*, 561 F.3d at 278. Nationwide does not contend that the Nelson parties maintain any offices or agents in Virginia or own any property in Virginia. Similarly, Nationwide does not argue that the Nelson parties reached into Virginia in order to solicit or initiate business or that they ever made any in-person contact in Virginia with respect to the Lamour loan. Furthermore, Nationwide "assume[s] that the Nelson Parties' activity in Virginia is isolated to involvement in the Lamour Loan," and accordingly, Nationwide does not argue that the Nelson parties deliberately engaged in significant or long-term business in Virginia. (*See* Def.'s Mem. Opp. Mot. Dismiss Amended Third-Party Compl. 10, ECF No. 37.) While SunTrust and Nationwide agreed to submit to personal jurisdiction in Virginia, Nationwide has not alleged that the Nelson parties signed or adopted this Agreement.

Instead, Nationwide's argument for personal jurisdiction relies on the fact that the Nelson parties closed and disbursed the Lamour loan provided by a Virginia corporation, namely SunTrust, and subsequently submitted loan package materials to SunTrust in Virginia. Pursuant to the closing instructions, Nationwide asserts that the Nelson parties mailed the entire closed loan package, including the Occupancy Affidavit in which Lamour represented that he would reside in the property, to SunTrust's address in Richmond, Virginia. (*See* Def.'s Mem. Opp. Mot. Dismiss Amended Third-Party Compl. 6-8, ECF No. 37.) As a result, and since the mortgage documents indicated that the lender was SunTrust, Nationwide argues that the Nelson parties "were well aware they were dealing with a Virginia corporation . . . [and] [i]t was foreseeable that false

representations might cause substantial harm in Virginia." (*See* Def.'s Mem. Opp. Mot. Dismiss Amended Third-Party Compl. 12, ECF No. 37.)

However, the Nelson parties argue that to the extent that they entered into a transaction with SunTrust, they did so with SunTrust's office in New York, rather than SunTrust's office in Virginia. The Nelson parties argue that they dealt with a SunTrust office in New York prior to closing, and were only required to send the loan materials to the Virginia office after performing their obligations to close the loan and disburse the loan amount. Indeed, while the closing instructions direct the Nelson parties to send the closed loan package to 1001 Semmes Avenue in Richmond, Virginia after the disbursement is made, the instructions also specify the Closing Contact as "SunTrust Mortgage Inc., 145 Pinelawn Road in Melville, New York." (Def.'s Decl. re Mem. Opp. Exs. E, F, ECF No. 38-4.) Accordingly, the Nelson parties seek dismissal on the ground that "[s]imply mailing documents to SunTrust's Richmond office is insufficient to invoke the jurisdiction of the Virginia courts." (Reply Mem. Supp. Mot. Dismiss Amended Third-Party Compl. 3, ECF No. 39.)

The Court must agree with the Nelson parties that the mere mailing of the loan materials to the Virginia SunTrust office, documenting an already completed business transaction with the New York SunTrust office, does not suffice as a basis for personal jurisdiction. *See Superfos Invest., Ltd.,* 774 F.Supp. at 397-98 ("it is generally held that mere phone calls and letters, and arguably fax communications, in furtherance of a transaction are insufficient to form a basis for personal jurisdiction"); *Unidyne Corp. v. Aerolineas Argentina,* 590 F.Supp 391, 396 (E.D. Va. 1984) ("Mere telephone

conversations, telex messages and letters *negotiating* a transaction are insufficient to form a basis for in personam jurisdiction") (emphasis in original); *Medeco Security Locks, Inc., v. Fichet-Bauche*, 568 F.Supp. 405, 408 (D. Va. 1983) (the defendant's mailing of a letter to the plaintiff's Virginia offices alone was not sufficient for personal jurisdiction). This mailing was the only act required of the Nelson parties which took place in Virginia. Such contacts do not sufficiently show that the Nelson parties purposefully availed themselves of the benefits of doing business in Virginia. Nationwide has thus failed to satisfy the first prong of the test for specific personal jurisdiction, and it is unnecessary for the Court to address the remaining two prongs. The Court thus finds that Nationwide has failed to make a prima facie showing of personal jurisdiction over the Nelson parties.

## IV. Conclusion

For these reasons, the Court GRANTS the Nelson parties' Motion to Dismiss and DISMISSES the Amended Third-Party Complaint against Nelson & Roach Title Corp., Nelson & Roach Attorneys at Law and John E. Nelson.

An appropriate Order shall issue.

/s/
Henry E. Hudson
United States District Judge

Dated: Dec 6, 2012
Richmond, Virginia